*333
 
 HAMÍTER, Justice.
 

 Ethel B. Cartwright brought this direct action against Firemen’s Insurance Company of Newark, New Jersey, the automobile public liability insurer of Dr. Garland Kent, to recover for property damage and personal injuries allegedly suffered when Dr. Kent’s automobile, while being operated by him, struck the rear of her car when she was stopped in obedience to a traffic signal. (Dr. Kent himself was not named as a defendant.) The petition recited several acts of negligence by Dr. Kent in the operation of his vehicle.
 

 The defendant denied any negligence on the part of Dr. Kent and averred that the accident was unavoidable, it having been caused by the sudden and unexpected failure of the brakes of the Kent automobile.
 

 Following a trial the district court dismissed plaintiff’s suit. The judgment was affirmed on appeal. La.App., 213 So.2d 154. We granted certiorari on plaintiff’s application. 252 La. 956, 215 So.2d 127.
 

 The record herein fully sustains the finding of the Court of Appeal, as set forth in its opinion, which was as follows: “The Cartwright automobile was stopped at a stop-sign inhibiting entrance into an intersection. As Dr. Kent approached it from the rear, he slowed to a 5-10 mile per hour coast. When about one and one-half car-lengths behind, he applied his brakes more forcibly, it then being time to stop completely. Nothing happened; his ' foot just went to the floor. Within a second, he struck the Cartwright vehicle.
 

 “The investigating police officer found brake fluid in the vicinity of the car, and a stream of brake fluid leading to it starting from about ten feet behind the point of impact. He tested the brakes and found they had no braking power. A mechanic who repaired the vehicle found that the left front brake line had ruptured and had released all the fluid from the brake system.
 

 “The expert evidence is uncontradicted that the loss of brake fluid is virtually simultaneous with such a rupture, and that prior detection is very difficult of a latent defect in the brake line which will suddenly rupture after gradual stress over a period of time.
 

 “The evidence further shows that Dr. Kent had his automobile inspected every six months for defects, that he had brake repairs about six weeks before the accident, and that he had no advance notice of the latent weakness of the brake line, nor could reasonable observation have given him any.”
 

 The issue presented under these facts is whether an automobile owner is strictly and absolutely responsible for damages caused by a defect in his vehicle, regardless of the fact that he had no reasonable means of discovering such defect and had used every precaution to maintain the machine in a safe condition. Otherwise stat
 
 *335
 
 ed, the question is: Is the automobile owner liable, when without fault, for damages resulting from a latent defect in his vehicle?
 

 We have considered this issue but once before, then on an application for certiorari, in a case in which the Court of Appeal for the Fourth Circuit adhered to the doctrine of no liability without fault; and it squarely held that proof that plaintiff’s damages were caused by a latent defect in defendant’s automobile relieved him of liability for the damages when it was shown that he used reasonable means to keep his vehicle in a safe working condition, de la Houssaye v. State Farm Mutual Automobile Insurance Company, La.App., 202 So. 2d 287. Therein, we denied certiorari with the observation that “On the facts found by the Court of Appeal, there is no error of law in its judgment.” 251 La. 671, 205 So.2d 440.
 

 Prior to our discussion of the issue presented, we observe that strongly motivating our action in issuing certiorari in the instant case were certain comments contained in an especially concurring opinion of one of the judges of the Court of Appeal. Therein, that judge disapproved the rationale of and the result reached in de la Houssaye, supra, and he indicated that he would vote otherwise if a majority of the court gave approval to the views expressed in his concurring opinion. We felt that his observations tended to create uncertainty in this area of the law as stated in the de la Houssaye case, when viewed in the light of our denial of certiorari there, and that a definitive expression by this court would serve to resolve the unsettling effect.
 

 There is little doubt that in this jurisdiction, in suits sounding in tort, there can be no recovery without fault except in those instances where strict liability is provided by legislative action. For examples, with respect to the exceptions, the absolute liability of the owner of a building is ordered when damage is occasioned because of vices in its construction (Revised Civil Code Article 2322) ; and the liability of the “master” is declared for “the damage caused * * * by whatever is thrown out of his house into the street * *
 

 (Revised Civil Code Article 177.)
 

 That such is the settled jurisprudence is recognized by plaintiff and by the author of the concurring opinion. Nevertheless, they contend that (as expressed in such opinion) : “In the light of modern traffic conditions and our crowded and urbanized society, and in the light of
 
 more recent
 
 legislation, certainly the better rule (and quite possibly the legislatively-intended rule) would be instead to apply a strict liability against owners who permit vehicles with defective brakes — highly dangerous instrumentalities, whether the defects are latent or not — to be operated on the highways and to do harm to innocent persons
 
 *337
 
 lawfully on or near the highway.” (Italics ours.)
 

 The further urge that Revised Civil Code Article 2317, when read in connection with LRS 32:341 (which provides that motor vehicles when operated on a highway of this state “shall he equipped with brakes adequate to control the movement of and to stop and hold such vehicle”), is broad enough to provide a concept or policy of liability without fault, at least in the case of defective brakes. And they say that such more recent legislation (LRS 32:341) reasonably implies “that the courts may hold a violator of this legislative policy to be negligent per se and strictly liable for damages caused by his violation.”
 

 We do not agree with the contentions.
 

 First of all, the advocates of such theory are mistaken in their assertion that the provision relied on is “more recent legislation”. True, the Highway Regulatory Act in its present form was enacted in 1962, as is indicated in the concurring opinion. But the particular section cited as providing the basis for formulating a new policy was but a reenactment of former legislation which was contained in its identical language in a highway regulatory enactment of 1928. See Section 45 of the Act 296 of 1928. See also a prior brake regulation of similar import in Act 232 of 1926, although somewhat differently expressed. We fail to understand, therefore, how such a legislative enactment, which has existed for over forty years, can be said to have been intended to create a new policy relative to civil liability because of modern traffic conditions and our crowded and urbanized society.
 

 Too, under the circumstances and the condition of our law, even if it were new legislation, we do not agree that it shows an intent to have the effect suggested by plaintiff. Except in the food and drink cases, where the courts have found an implied warranty based on the theory that the
 
 preparer or manufacturer
 
 of food products is presumed to know the conditions under which they were prepared, and it
 
 warranted,
 
 their fitness for human consumption to the consumer (see LeBlanc v. Louisiana Coca Cola Bottling Company, Ltd., 221 La. 919, 60 So.2d 873), the courts of this state have consistently rejected any deviation from the theory that Revised Civil Code Article 2317 must be read in connection with Revised Civil Code Articles 2315 and 2316.
 

 Particulaidy noteworthy we think are those cases which have refused to depart from such premise insofar as the liability of the retailer of sealed foodstuffs is concerned (see Lesher et al. v. Great Atlantic and Pacific Tea Company, La.App., 129 So.2d 96, cert. denied, and McCauley v. Manda Brothers Provisions Company, Inc., La.App., 202 So.2d 492, affirmed in 252 La. 528, 211 So.2d 637), as well as the lia
 
 *339
 
 bility of the owner of domestic animals, despite the specific language of Revised Civil Code Article 2321, which has also been read in connection with Civil Code Articles 2315 and 2316. (These cases are legion, i. e., see Tripani v. Meraux, 184 La. 66, 165 So. 453, Mercer v. Marston, 3 La. App. 97, which discusses in detail the earlier jurisprudence of this court, Willis v. Schuster et al., 28 So.2d 518, cert. denied, and Tamburello v. Jaeger, La.App., 176 So.2d 707.)
 

 In -view of the long and firmly established doctrine that fault is a prerequisite for recovery in suits sounding in tort, it would require, much more positive and specific legislative expression than is contained in the Highway Regulatory Act of 1962 (including the language relied on by plaintiff herein and cited in support of the concurring opinion) for us to hold that the Legislature intended to abandon such principle in any given instance.
 

 We have carefully examined all of the provisions of the Highway Regulatory Act, and we • can find nothing whatsoever therein to indicate an intent on the part of the Legislature that the provisions thereof, generally, should in any manner affect formerly existing principles relating to civil liability. To the contrary, we notice that the Legislature was mindful of certain changes which it intended to effect with regard to civil liability, and it specifically made provision therefor. ' Thus, LRS 32:237, subd. B provides that persons violating the rule relative to tampering with, moving or destroying barricades or signs placed on the highway by authorized persons would be
 
 “prima facie
 
 at fault and responsible for any damage to persons or property resulting from the said violation.” And LRS 32:291 makes provision for the liability of the owner or operator of overweight vehicles. (Italics ours.)
 

 Conceding arguendo that there are policy considerations, as suggested in plaintiff’s brief and in the concurring opinion, which might make it desirable to place such an absolute liability on the owner of a motor vehicle operated on public highways, we can conceive of others which would oppose such a result. We have before us no evidence whatsoever where the greater social or economic need lies. This is a matter of policy which addresses itself to the Legislature which is equipped to determine whether modern developments demand a change in our existing law. Moreover, that is the body which is charged, under our system of government, with such duty. It has been our experience through the years that that body has been mindful of its obligation in such matters and has acted accordingly on numerous occasions.
 

 An additional contention of plaintiff is that, aside from a legal strict liability, this defendant was negligent in failing to apply his emergency brake to avoid the
 
 *341
 
 collision. As we have heretofore stated our principal reason in granting certiorari was to consider the question of the nature of the automobile owner’s liability. Nevertheless, we have reviewed the record herein on the facts relative to this contention of negligence and we have concluded that the Court of Appeal properly held that, under the circumstances of this case, there was not sufficient time for the defendant to have made effective use of his emergency brake.
 

 For the reasons assigned the judgment of the Court of Appeal is affirmed at plaintiff’s costs.