TUCKER, Judge.
This is a delictual action in which plaintiff William J. Simon sues for bodily injury and special damages arising out of an automobile collision occurring on July 13, 1968, *727 on Highway 61, just south of St. Francis-ville, Louisiana. Plaintiff has joined in the action Sammie Ferrington, the owner and driver of the 1962 Ford automobile which collided with his, and Ferrington’s insurer, Allstate Insurance Company; the Ford Motor Company, a foreign domiciliary, the manufacturer of defendant Ferrington’s automobile; Hub City Motors, Inc., of Lafayette, Louisiana, the automobile dealer to whom Ford Motor Company delivered Ferrington’s vehicle, and its insurer Hardware Mutual Casualty Company; Mcll-waine Motor Company, Inc., of Columbia, who acquired the Ford in question and sold it to Ferrington, and Mcllwaine’s insurer, Bituminous Casualty Corporation. Plaintiff Simon sued all defendants in solido, alleging their negligence, and asking One Million Five Hundred Thousand and No/100 ($1,500,000) Dollars in damages, together with the legal interest thereon from the date of judicial demand until paid, plus all costs of court. Motions for summary judgment by Hub City Motors, Inc., and its insurer Hardware Mutual Casualty Company, and Mcllwaine Motor Company, and its insurer Bituminous Casualty Corporation, were denied, and the case proceeded to trial on its merits. Judgment was rendered on June 28, 1971, dismissing suit against the Ford Motor Company, the Hub City Motor Company, Mcllwaine Motor Company, Hardware Mutual Casualty Company, and Bituminous Casualty Corporation. Judgment was rendered in plaintiff’s favor against Sammie Ferrington and his insurer Allstate Insurance Company. The lower court found that defendant Fer-rington was not guilty of any active negligence, but it held him guilty of “passive negligence” in failing to ascertain and correct the condition of the ball joints in his automobile.
From this judgment Plaintiff appealed to this court asking that all defendants he held in solido, and all defendants against whom judgment had been dismissed, as set forth supra, answered asking that the judgment of the lower court be affirmed.
Defendant Sammie Ferrington and his insurer Allstate Insurance Company also appealed, specifying as error that the lower court had imposed strict liability upon defendant Ferrington, although finding him not guilty of active negligence; in failing to exonerate defendant Ferrington on his defense of unavoidable accident due to latent defect; and in making an excessive award of damages.
All parties seem agreed upon the facts of the case which are as follows:
As plaintiff William Simon was driving his Ford Falcon automobile north on Highway 61 near St. Francisville, defendant Sammie Ferrington was driving his 1962 Ford south on the same highway. As the two vehicles approached each other, and were about to meet and pass each other on a bridge, the right front suspension of the Ferrington vehicle collapsed, making it impossible for Ferrington to steer or control his automobile. As a result of this steering failure, the Ferrington vehicle crossed the center line of the Highway and collided head-on with the Simon vehicle in its own proper northbound lane. Subsequent examination of the Ferrington vehicle revealed that the right ball joint' — a vital weight-bearing component of the wheel suspension — had torn loose from its moorings, causing the sudden collapse of the right front wheel and defendant’s subsequent inability to control its steering.
In a similar case decided this day by this same court, Wishom v. Ford Motor Company, 256 So.2d 298, it was pointed out by Judge Blanche that inasmuch as the defendant found himself in the wrong lane of traffic at the time of the accident, he was presumed to be negligent and bore the burden of establishing that he was without fault or that there were circumstances which justified his being in the wrong lane, citing Moreau v. Transport Insurance Company, 203 So.2d 727 (La.App. 3d Cir. 1967), writ refused 251 La. 686, 205 So.2d 605, and numerous cases cited therein.
*728 The trial court found Ferrington passively negligent in failing to properly maintain his vehicle. In so doing, the lower court concluded that Ferrington came within the rule of the Towner and Cartwright cases, infra, which hold an owner liable for an accident resulting from a latent defect where the owner either knew of the defect or the defect was one which could have been discovered upon proper inspection. In so holding, the trial court concluded that the age and mileage on the vehicle required a detailed inspection thereof. In so ruling, the lower court erred.
Ferrington, a crane operator, knowledgeable about auto mechanics, testified that he purchased the vehicle second hand, for family use, about three years prior to the accident. When bought, the vehicle had been driven about 30,000 miles. At the time of the accident, the car had gone about 75,000 miles. He stated the car was in good condition for its age; that it had been driven mostly by his daughter, and' that the vehicle had never given any trouble. He stated that shortly after obtaining the car, he removed the factory plugs from all ball joints, inserted a zerk or alemite fitting in place of the plugs and greased the vehicle, including all ball joints. He also stated that he regularly greased the car thereafter with a hand grease gun, approximately every 1,000 miles, using a lubricant recommended for vehicular lubrication. Ferrington also stated that his first indication of trouble was a loud popping noise which he heard immediately prior to the accident. His daughter, a passenger in the vehicle at the time of the accident, testified that she ordinarly drove the vehicle most of the time. She also stated that she had been driving the car a short time before the accident and did not detect any difficulty with the steering mechanism.
Robert Lee Frey, a Control Engineer for Ford Motor Company, testified in effect that when Ferrington’s vehicle left the factory, the ball joints, which form part of the steering mechanism, were factory lubricated and encased in a sealed housing. He explained that the bottom of each housing was provided with a removable “plug” which screwed into a threaded hole. The manufacturer recommended relubrication every 30,000 miles. He stated that to lubricate the ball joints, the plug would be unscrewed, a “zerk” or grease fitting inserted into the plug, and the vehicle greased with a special lubricant. He stated the better practice was to replace the plug, but conceded that after a relubrication job, the common practice was to leave the grease fitting in the housing instead. Frey stated that the life of a ball joint depended upon a number of variable factors such as type of use, the kinds of roads on which the vehicle was driven, weather conditions and the prevalence of dust, sand, snow, water or other substances. He stated there was very little likelihood of warning if a ball joint was failing. In most instances, he stated, such joints failed suddenly and without warning. Frey expressed the opinion that when a zerk was inserted instead of the factory plug, more frequent greasing would be required because the fitting would permit entry into the ball joint of a certain amount of foreign matter which would be kept out by the plug. He also stated that the procedure testified to by Ferrington amounted to proper owner maintenance. He further stated that the proper way to check a ball joint is to jack up the vehicle and examine the ball joint. According to Frey, most ball joint problems are discovered when front end alignment is indicated for one reason or another such as excessive tire wear or the development of a “shimmy” in a front wheel.
Mr. Alvin Doyle, an automotive expert, in substance corroborated Frey’s testimony concerning the construction and maintenance of ball joints. He was of the opinion that ball joints, being sealed units, were intended to last the life of the vehicle, and therefore did not fall within the realm of owner or service maintenance. In the absence of some warning sign such as a shimmy in the front wheel, a failing ball *729 joint would not ordinarily give any sign of trouble to the owner of a vehicle except perhaps an indication of a difference in driving or steering the car. According to Doyle, checking a ball joint is a mechanical procedure usually done by a mechanic skilled in front end aligning. Doyle agreed with Frey that Ferrington’s maintenance program was reasonable and proper. The clear import of his testimony is that if Ferrington was experiencing no difficulty in driving the car, there would be no reason for Ferrington to have the ball joints checked by an expert front end mechanic.
The record does not establish what caused the ball joint to fail. Ferrington himself replaced the ball joints following the accident. He did not keep the old parts, therefore, they were not available for inspection by the experts.
Under the circumstances, we find that the accident resulted from a latent defect of the ball joints. We also find that Ferrington has discharged the onus of showing that he was unaware of the defect, and that the defect could not have been reasonably discovered by such inspection as was required by virtue of the age and condition of the vehicle.
It is a cardinal principle of Louisiana law that there can be no delictual liability without fault (LSA: C.C. 2315-2316) save the few exceptions provided for in Civil Code Articles 2317-2322. Nowhere in the legislation of Louisiana is strict liability provided for the automoble owner. This principle has been well-stated recently by the Supreme Court in Cartwright v. Firemen’s Insurance Company of Newark, New Jersey, 254 La. 330, 223 So.2d 822 (1969), and followed by a number of cases since then. See Towner v. Milligan, 234 So.2d 500 (La. App.3d Cir. 1970) ; Mallett v. State Farm Mutual Automobile Insurance Co., 240 So. 2d 413 (La.App.3d Cir. 1970) ; and Dupre v. American Motorists Insurance Co., 246 So.2d 391 (La.App.1st Cir. 1971). In view of the law and the jurisprudence of Louisiana this court is constrained to overrule the decision of the lower court holding Sammie Ferrington and his insurer liable in damages for injuries suffered by the plaintiff William J. Simon in the unfortunate accident of July 13, 1968. In doing so it is ruling consistently with the case decided today by this court and referred to above as Wishom v. Ford Motor Company, 256 So.2d 298. In that case with similar facts and principles involved Judge Blanche adopted Towner v. Milligan, cited above, as applicable and quoted from it 234 So. 2d at page 502 as follows:
“The applicable rule of law is that a driver generally is not held to be responsible for latent defects in his car where he exercises reasonable care in having the car inspected and he has had no reasonable prior notice of a defective condition. In order for latent defects to constitute a valid defense, however, the proof must be strong enough to exclude any other reasonable hypothesis as to the cause of the accident except that it resulted from the alleged defects. The evidence must establish that the driver was not aware of the defects, and that the defects could not reasonably have been discovered by a proper inspection. Robinson v. American Home Assurance Company, 183 So.2d 77 (La.App. 3 Cir. 1966); Delahoussaye v. State Farm Mutual Automobile Insurance Co., 202 So.2d 287 (La.App. 4 Cir. 1967) ; Cartwright v. Fireman’s Insurance Company of Newark, New Jersey, 213 So.2d 154 (La.App. 3 Cir. 1968), affirmed at 254 La. 330, 223 So.2d 822).”
There is no finding of fault or contributory negligence on the part of plaintiff. As inequitable as it may seem to choose between two innocent parties and make the one who did not cause the accident bear the burden of the damages sustained; yet this is the prevailing law in Louisiana where automobile latent defects are involved. The language of Justice Hamiter in Cartwright *730 v. Fireman’s Ins. Co., is worthy of note at 223 So.2d 825:
“Conceding arguendo that there are policy considerations, as suggested in plaintiff’s brief and in the concurring opinion, which might make it desirable to place such an absolute liability on the owner of a motor vehicle operated on public highways, we can conceive of others which would oppose such a result. We have before us no evidence whatsoever where the greater social or economic need lies. This is a matter of policy which addresses itself to the Legislature which is equipped to determine whether modern developments demand a change in our existing law. Moreover, that is the body which is charged, under our system of government, with such duty. It has been our experience through the years that that body has been mindful of its obligation in such matters and has acted accordingly on numerous occasions.”
The judgment of the lower court dismissing all other defendants in this suit will be affirmed, as follows:

Ford Motor Company

Plaintiff’s suit against the Ford Motor Company was based upon his allegation that Ford’s design and manufacture of the Ferrington automobile was faulty and defective and that Ford knowingly marketed such a dangerous and defective product. Defendant Ferrington testified that he threw away the front balls and sockets when he repaired his automobile himself (Ferrington 42). There is no evidence that anyone else examined these balls and sockets, so there can be no determination as to the defect or design of these ball joints.
Although plaintiff has attempted to apply the jurisprudential doctrine of “res ipsa loquitur” to invoke the liability of Ford Motor Company, this principle is inapplicable in this case. It can be applied only where the instrumentality which caused the accident was under the control of the defendant, and where the accident was of the type that leaves no room for any presumption other than the negligence of the defendant against whom the doctrine is sought to be applied. Elliott v. General Motors Corp., 232 So.2d 907 (La.App.2d Cir.1970) and Morales v. Employers’ Liability Assurance Corporation, Ltd., 202 La. 755, 12 So.2d 804 (1943). In the case of an automobile six years old which has been driven 76,000 miles and is not under the control of the defendant, there are too many other presumptions that might arise to justify holding defendant Ford Motor Company guilty of negligence in its manufacture and marketing.

Hub City Motors, Inc., and Mcllwaine Motor Company, Inc.

On February 15, 1962, Ford Motor Company sold a new 1962 Ford Galaxie automobile to Hub City Motors, Inc. Shortly thereafter, on May 16, 1962, the same new automobile was sold by Hub City Motors to Mcllwaine Motor Company, Inc., which then sold it as a new car, re-acquiring it by trade-in several years later and subsequently, on December 24, 1965, selling it to Sammie Ferrington as a used car.
Plaintiff alleges that Hub City Motors and Mcllwaine Motor Company failed to inspect the vehicle “carefully and meticulously” in an attempt to “detect and discover faulty manufactural defects” in the vehicle. Plaintiff further alleges that the aforementioned motor companies failed to give notice and warning to buyers of the car in question of the allegedly defective ball joint. The law imposes no duty upon the vendors of new automobiles, however, to discover any defects except those that are patent and obvious. Gordon v. Bates-Crumley Chevrolet Company, 158 So. 223 (La.App.2d Cir. 1935). Defendant motor companies performed the routine inspections normal in receipt of new cars, checking for obvious defects (Tr. 155, 157). They found nothing to indicate defects in the ball joint assemblies of the automobile, nor were they under obligation to search for hidden defects in such assembly under principles set forth in Gordon v. Bates Crumley, cited above, which this court holds applicable to the vendor of used *731 cars as well as to the vendor of new cars. Barker v. Phoenix Ins. Co., 220 So.2d 720 (La.App.2d Cir. 1969). It is significant that the Ferrington car ran well for two and one-half years and twenty thousand miles after he purchased it from Mcllwaine Motors. This court cannot find that these companies breached any duty in failing to find the allegedly defective ball joint.
Plaintiff attempted to apply the jurisprudential doctrine of res ipsa loquitur to Hub City and Mcllwaine, as well as to Ford Motor Company. This court finds this doctrine equally inapplicable to these two defendants for the same reasons set forth above in treatment of the allegations of negligence of Ford Motor Company. There is no basis for finding any liability in the three defendant motor companies, and their insurers.
The judgment of the lower court awarding damages to the plaintiff, William J. Simon, against the defendants, Sammie Fer-rington and Allstate Insurance Company will be reversed at plaintiff’s costs; in all other respects the judgment is affirmed.
Judgment affirmed in part; reversed in part; and rendered.