260 So.2d 137 (1972)
Lawrence T. RYAN, Plaintiff-Appellant,
v.
John Q. RAWLS, Defendant-Third-Party Plaintiff-Appellant,
The TRAVELERS INSURANCE COMPANY, Third-Party Defendant-Appellee.
No. 11810.
Court of Appeal of Louisiana, Second Circuit.
March 28, 1972.
*139 Ford E. Stinson, Benton, for plaintiff-appellant Lawrence T. Ryan.
Cook, Clark, Egan, Yancey & King, by Benjamin C. King, Shreveport, for defendant-third-party plaintiff-appellant John Q. Rawls.
Blanchard, Walker, O'Quin & Roberts, by Wilton H. Williams, Jr., Shreveport, for third-party defendant-appellee Travelers Ins. Co.
Before AYRES, PRICE and HALL, JJ.
HALL, Judge.
This case, as well as the companion case of Carter v. Rawls, La.App., 260 So.2d 144, also on appeal and decided this day, arose out of an accident which occurred on January 21, 1964, at the intersection of Louisiana Highway 2 and Louisiana Highway 3 in the City of Plain Dealing, Louisiana. Plaintiff, Ryan, was stopped in his pickup truck at the intersection in obedience to the stop sign for westbound traffic on Highway 2. Carter's school bus was parked in front of a place of business near the northeast corner of the intersection. The accident occurred when a loaded pulpwood truck owned and operated by defendant, John Q. Rawls, approaching the intersection in an eastbound direction on Highway 2, left the highway and drove through a drainage culvert on the right, knocked down several signs including the stop sign for eastbound traffic and turned over on its side in the easterly portion of the intersection. The chains holding the load on the truck broke and pulpwood was scattered throughout the intersection. Ryan's pickup truck and Carter's school bus were totally demolished by the falling pulpwood and Ryan received personal injuries.
In answer to the suits filed by Ryan and Carter defendant denied any negligence on his part and alleged that as he approached the intersection, the brakes on his 1961 Ford two-ton truck suddenly failed placing him in an emergency situation and *140 that he took every step possible in an attempt to avoid the accident. Additionally, defendant filed a third party demand against The Travelers Insurance Company, public liability insurer of Gleason-Snyder Ford Agency, seeking recovery for the amount of any judgment which might be rendered against him. The third party demand was based on allegations of negligence of the agency for faulty repair of the brakes on defendant's truck a few days before the accident.
In a written opinion, the trial court found the accident occurred as the result of brake failure on defendant's truck due to leakage of brake fluid from the copper brake fluid transfer line on the bottom cylinder of the left rear wheel. The trial court found there was no evidence that defendant was operating the pulpwood truck in a negligent manner prior to the brake failure, that defendant was confronted with a sudden emergency when his brakes failed and that he did everything within his power to stop the loaded truck including shifting into low gear stripping the gears in the transmission, driving to the shoulder, hitting a drain curb or culvert and attempting to turn into Louisiana Highway 3. Citing Cartwright v. Firemen's Insurance Company of Newark, New Jersey, 254 La. 330, 223 So.2d 822 (1969), as holding there is no liability on the part of a motorist where the facts show the accident was due to brake failure which could not reasonably have been discovered or anticipated by the motorist, the court found defendant was not negligent in not having discovered or anticipated the brake failure because he had the brakes repaired within the week prior to the accident and the truck operated properly until the moment of the failure at the scene of the accident.
Judgment was rendered in favor of defendant rejecting plaintiff's demands and, accordingly, in favor of Travelers, rejecting the third party demand of defendant. Plaintiff appealed. Defendant appealed only insofar as the judgment rejected his third party demand against Travelers, in order to protect his right in this regard in the event of a reversal on appeal. We reverse the judgment of the trial court insofar as it rejects plaintiff's demands and we affirm the judgment rejecting defendant's third party demand against Travelers.
The jurisprudence has developed certain well-defined legal principles applicable to brake failure cases:
(1) There is no absolute liability or liability without fault on the part of a motorist whose vehicle causes damage to an innocent victim by reason of a latent defect in the vehicle.
(2) A motorist generally is not held to be responsible for latent defects in his vehicle where he exercises reasonable care in having the vehicle inspected and has no reasonable prior notice of a defective condition.
(3) In order for latent defects to constitute a valid defense, (a) the proof must be so strong as to exclude any other reasonable hypothesis as to the cause of the accident except that it resulted solely from the alleged defects, and (b) the evidence must establish that the motorist was not aware of the defects and that the defects could not reasonably have been discovered by proper inspection.
(4) Every motor vehicle must be equipped with an emergency brake and the failure of a motorist to use his emergency brake constitutes negligence if there is a reasonable opportunity to do so effectively after the ordinary foot brakes fail.
See Cartwright v. Firemen's Insurance Company of Newark, New Jersey, 254 La. 330, 223 So.2d 822 (1969), affirming 213 So.2d 154 (La.App. 3d Cir. 1968); Towner *141 v. Milligan, 234 So.2d 500 (La.App. 3d Cir. 1970); Littleton v. Arrow Food Distributor, Inc., 224 So.2d 131 (La.App. 3d Cir. 1969); Myles v. Lee, 209 So.2d 533 (La.App. 2d Cir. 1968); Delahoussaye v. State Farm Mutual Automobile Insurance Co., 202 So.2d 287 (La.App. 4th Cir. 1967); Robinson v. American Home Assurance Company, 183 So.2d 77 (La.App. 3d Cir. 1966); Davis v. New York Underwriters Insurance Company, 141 So.2d 673 (La.App. 1st Cir. 1962); Fulco v. Lumbermen's Mutual Casualty Company, 110 So.2d 871 (La.App. 2d Cir. 1959); Rochefort v. Teche Lines, 186 So. 751 (La.App.Orl. 1939).
LSA-R.S. 32:341 requires that every motor vehicle "shall be equipped with brakes adequate to control the movement of and to stop and hold such vehicle, including two separate means of applying the brakes, each of which shall be effective to apply the brakes to at least two wheels." The statute further provides that "[i]f these two separate means of applying the brakes are connected in any way, they shall be so constructed that the failure of any one part of the operating mechanism shall not leave the motor vehicle without brakes on at least two wheels."
Although the record reveals defendant took positive evasive action in an attempt to stop his truck after the service brakes failed, he testified with reference to emergency brakes as follows:
"Q You didn't apply the emergency brake on the truck?
"A No sir I didn't have one.
"Q Oh, you don't have one on your truck?
"A There wasn't one put on there."
We hold that defendant's operation of the truck without an operable and effective emergency brake in violation of LSA-R.S. 32:341 constituted negligence which was a proximate cause of the accident. Defendant's service brakes failed when he was more than three hundred feet from the intersection. There is no evidence in the record tending to show that defendant would not have had ample time to use his emergency brakes if the vehicle had been equipped with such brakes, nor is there any evidence in the record tending to show that the use of such brakes would not have been effective in stopping the loaded pulpwood truck.
In Rochefort v. Teche Lines, supra, defendant's school bus was involved in an accident when its service brakes failed and the driver either failed to apply his emergency brake at all or did not do so until the last moment before the collision. Defendant contended the statute did not require that a bus be equipped with emergency brakes which will stop it, the purpose of such brakes being to hold the bus after it is stopped. Defendant conceded that the emergency brake with which the bus was equipped was not effective as a means of stopping the bus in an emergency but contended that the brakes on its bus were no different than other buses of standard manufacture with respect to the efficiency of the emergency brake. In concluding that defendant was negligent in failing to have its bus equipped with an effective emergency brake, the court held:
"It seems clear to us that the purpose of the Legislature, as expressed in the quoted provision, was to provide two separate means of stopping motor vehicles in order to increase the margin of safety.
* * * * * *
"The Louisiana Statute requires that every motor vehicle shall be equipped with two separate means of applying the brakes `each of which means shall be effective' and that the brakes shall be `adequate to control the movement of and to stop and to hold such vehicle'. It seems to us too clear for argument that the Legislature intended that two separate brakes, both of which should be efficient and capable of stopping a car, *142 should be part of the equipment of every motor vehicle, so that in case one brake, let us say the foot brake, should fail, the other brake, the hand or emergency brake, might control the car...."
In addition to our finding of negligence on the part of defendant in failing to have his vehicle equipped with an operable, effective emergency brake, we are of the opinion defendant has also failed to sustain his burden of showing reasonable care in the inspection of his vehicle and lack of reasonable prior notice of a defective condition.
The failure of defendant's service brakes was the result of leakage of the brake fluid from the copper brake fluid transfer line on the bottom cylinder of the left rear wheel. The evidence shows this line was exposed and virtually unprotected. In operating his truck for hauling pulpwood, it was necessary for defendant to drive the truck into the woods over rough roads and where there were no roads at all. Defendant testified it was difficult for him and for pulpwood haulers generally to keep brakes on their trucks due to damage sustained from hitting stumps and underbrush while driving in the woods. The testimony of defendant and mechanics who regularly repair pulpwood trucks plainly shows that damage to brake lines on these trucks is a common, regular occurrence.
The standard of what constitutes reasonable care, inspection and prior notice with reference to brake defects in a pulpwood truck is substantially different than with reference to a vehicle put to normal street and highway use. Defendant testified that he inspected his brakes every morning and did so on the morning of the accident, but found nothing wrong. Because of the frequency of damage to pulpwood truck brake lines installed in the manner of the brake lines in this instance, it would not be unreasonable to inspect the brakes after each trip into the woods. In this case, an inspection after coming out of the woods prior to the accident would almost certainly have revealed the leak, as the evidence shows there was not a sudden rupture at the scene of the accident but a leak requiring numerous applications of the brakes in order to eject all of the brake fluid and render the brakes ineffective. The leaking brake fluid would have been noticeable on the wheel cylinder. The brakes were only applied two or three times after the truck left the woods until the failure at the scene of the accident. It is not unlikely that a proper inspection on the morning of the accident would have revealed the defect.
Although we do not apply a rule of absolute liability for damages caused by brake failure on a pulpwood truck, we do impose a heavy burden on the owners and operators of trucks put to such use to exclude every reasonable hypothesis of fault in order to successfully urge a defense of latent defects. We hold in this case that defendant has failed to prove that he used reasonable care in the maintenance of his vehicle and that the defect could not have been discovered by reasonable and proper inspection.
Having found that there was a defect in the brakes on defendant's truck and that there should be judgment in favor of plaintiff against defendant, it becomes necessary to consider his third party demand against The Travelers Insurance Company, public liability insurance carrier of Gleason-Snyder Ford Agency, who performed repair work on the brakes of the truck only a few days before the accident.
In order to be successful on the third party demand, defendant must show by a preponderance of the evidence that the defect in the brakes was caused by the negligent repair work performed by the agency.
Both defendant and third party defendant produced expert testimony in regard to the condition of the brakes on the date of the accident and the possible reasons for the defective condition. It was definitely *143 established that a new copper transfer line was installed on the left rear wheel about ten days prior to the accident. The brakes still did not function properly and the truck was brought back in to the agency's repair shop for further work on one or two additional occasions. The mechanic who did the work had no independent recollection of the repairs because of the large volume of similar repairs done on defendant's and other pulpwood trucks.
Defendant's expert witness testified that in his opinion the flange nut was loose which allowed the copper tube to vibrate resulting in the breaking of the flange or flared end of the copper tubing. This caused a loss of the seal between the copper tube and the flange nut, which allowed the brake fluid to leak out at that point. He testified that in his opinion the nut should have been tightened about a half turn more at the time of the last repair. Third party defendant's experts testified that it is a matter of individual judgment of each mechanic as to how tight a nut should be and that if the nut is put on too tight it can cause the copper tube to crack. These experts were also of the opinion that if the nut was too loose allowing the copper tube to vibrate, the break in the tube would have been at the other end where it was held tight. Although the evidence preponderates that the damage to the transfer line was not caused by a sudden blow it could have resulted from vibrations due to the manner in which the truck was used.
Considering all of the evidence in connection with the cause of the brake line defect, we find that defendant has failed to prove by a preponderance of the evidence that the defect was the result of improper installation or repairs by third party defendant's insured.
It was stipulated that the amount of property damage to plaintiff's truck was $1,143. Plaintiff's injuries consisted of superficial cuts and glass splinters in his face, neck and scalp. He was treated by Dr. S. G. Carrington on the day of the accident for these injuries for which no sutures were required. Dr. Carrington testified these injuries were completely healed at the time of plaintiff's second visit to his office three weeks after the accident. On this second visit to Dr. Carrington plaintiff complained of constant headaches and neck aches. After a thorough examination, the doctor found plaintiff's condition to be essentially normal. He recommended plaintiff have x-rays made to rule out the possibility of hidden complications.
About three months after the accident, plaintiff was examined by Dr. John M. Gosslee, an orthopedic specialist. Dr. Gosslee concluded plaintiff's complaints were a result of a condition which existed prior to the accident but which may have been aggravated by the accident. He recommended plaintiff take aspirin and concluded his condition would improve if he were encouraged to continue his every day activities. There is no evidence of any further medical treatment.
We conclude an award of $1,500 will properly compensate plaintiff for his personal injuries. The only evidence offered as to plaintiff's expenses supports an award of $45 for medical expenses and $11.60 for travel expenses to Shreveport and Benton for medical attention or a total of $56.60.
For the reasons assigned, the judgment of the district court rejecting plaintiff's demands is reversed and it is hereby ordered, adjudged and decreed, that there be judgment in favor of plaintiff, Lawrence T. Ryan, and against defendant, John Q. Rawls, in the full sum of $2,699.60, together with legal interest thereon from date of judicial demand until paid. The judgment of the district court rejecting the third party demand of John Q. Rawls against The Travelers Insurance Company *144 is affirmed. Defendant-appellant, John Q. Rawls, is assessed with all costs of these proceeding's.
Affirmed in part, reversed in part and rendered.