304 So.2d 760 (1974)
Louis SERS, Plaintiff-Appellee,
v.
SOUTH CENTRAL BELL TELEPHONE COMPANY et al., Defendants-Appellants.
No. 4771.
Court of Appeal of Louisiana, Third Circuit.
December 16, 1974.
Watson, Murchison, Crews & Arthur, R. Raymond Arthur, Natchitoches, for defendants-appellants.
Whitehead & McCoy, C. R. Whitehead, Jr., Natchitoches, for plaintiff-appellee.
Before HOOD, CULPEPPER, and WATSON, JJ.
HOOD, Judge.
Louis Sers claims damages for personal injuries which he sustained when a vehicle *761 owned by South Central Bell Telephone Company collided with a pickup truck owned by Sers. The defendants are the telephone company and its employee, Richard K. Robinette, Jr. Judgment was rendered by the trial court in favor of plaintiff, and defendants have appealed.
A companion suit, instituted by Safeco Insurance Companies against the same defendants, was consolidated for trial and appeal with the instant case. Safeco was the collision insurer of the Sers vehicle, and it paid its insured $873.50 to cover the damages to the pickup truck. It instituted this suit as subrogee of Sers to recover the amount paid. Judgment was rendered by the trial court in favor of Safeco, and defendants appealed. We are rendering a separate judgment in that suit. See Safeco Insurance Companies v. South Central Bell Telephone Company, et al., La.App., 304 So.2d 764.
Two issues are presented. One is whether defendants are relieved from liability because of a latent defect in the vehicle owned by the defendant telephone company. The other issue relates to quantum.
The accident occurred about 12:30 P.M. on December 12, 1972, at the intersection of Texas Street and Fifth Street in the City of Natchitoches, Louisiana. Texas Street runs east and west and is the preferred thoroughfare at that point. Fifth Street runs north and south, and stop signs were located at the crossing warning motorists on Fifth Street to stop before entering the intersection or proceeding to cross Texas Street.
At the time of the accident, Sers was riding as a passenger in his own pickup truck, which was being driven west on Texas Street by Alfred Wiggly. While that pickup truck was traversing the intersection of Texas and Fifth Streets, the right side of it was struck by a truck owned by the telephone company and being driven by its employee, Richard K. Robinette, Jr.
Immediately before the collision occurred, the telephone company truck was traveling south on Fifth Street as a speed of between 20 and 25 miles per hour. When it reached a point about 70 to 75 feet north of the above mentioned intersection, Robinette applied the brakes of the truck, his purpose being to bring the vehicle to a stop before proceeding into the intersection. He testified that the brakes "held for just a second" and that "then there was a snap and it (the brake pedal) went to the floor."
The truck was equipped with a standard shift, and Robinette stated that immediately after he discovered that the foot brakes would not work, he tried to shift the truck into a lower gear and that he then attempted to turn to his right on Texas Street in an effort to avoid a collision. Despite his efforts, the left front part of the truck he was driving struck the right side of the Sers vehicle. The collision occurred in the intersection, after Robinette had entered the crossing and was in the process of making a right turn. Plaintiff sustained personal injuries as a result of that collision.
There were no vehicles in the crossing when the driver of the telephone company truck applied his brakes and at the time he discovered that they would not work. He applied his brakes at that time solely because there was a stop sign at the crossing which he intended to obey. There was a slight downhill grade from the point where the brakes were applied to the crossing. Robinette testified, however, that he had ample time within which to bring his truck to a stop before he reached the intersection, if his brakes had worked properly. He observed the Sers vehicle enter the intersection at about the time his own truck entered it and at the time he was trying to make a right turn on Texas Street.
Robinette did not attempt to apply the emergency brake of the truck at any time *762 before the collision occurred. He testified that the emergency brake was in good working order, that his work as a telephone installer required him to make many stops, and that he had used his emergency brake just a few minutes before this accident occurred. The emergency brake was operated by a pedal located to the left of the clutch pedal, and it was designed to be operated with the left foot of the driver. Robinette explained that he did not apply the emergency brake because he "just simply didn't think about it," that he "was trying to find a way for the truck to go without hitting anyone," and that he guessed that he "kind of panicked."
Shortly after the accident occurred it was discovered that a "link rod bolt" on the foot brake pedal had sheared off or broken, and that that had caused the brake system to fail. The link rod bolt serves to attach the brake pedal to a rod which connects with and activates the master brake cylinder. It is made of steel and is specially designed to serve the above purpose. When the link rod bolt broke, there ceased to be a connection between the brake pedal and the master brake cylinder, and the brakes thus ceased to operate.
Defendants introduced evidence showing the times when the brakes of the telephone company truck had been checked and repaired, the procedure routinely employed by defendants in checking the brakes of the truck daily, and the difficulty which would be encountered in detecting a defect in the link rod bolt. Defendants argue that they had exercised reasonable care in having the truck inspected and repaired, that the brake failure was caused by a latent defect of which they had no knowledge and which could not reasonably have been detected by an inspection, and that defendants thus are free from fault and are relieved from liability in this case.
The trial judge concluded that defendant Robinette was negligent in having failed to use his emergency brake after he discovered that his foot brakes had ceased to function, that his negligence in that respect was a proximate cause of the accident, and that defendants are liable to plaintiff for the damages he sustained in that accident. In view of that holding, it was unnecessary for the trial court to consider the question of whether defendants exercised reasonable care in having the truck inspected, and whether they reasonably should have discovered the defect in the braking system of the telephone truck sooner than they did.
We have decided that the evidence supports the above conclusions reached by the trial court.
The requirement of LSA-R.S. 32:341 that every automobile shall be equipped with two separate means of applying the brakes is a safety measure, and it is the obvious intent of the statute to require that the motorist resort to the use of the emergency brake when he discovers that the ordinary foot brakes are ineffective. The failure of a motorist to use the emergency brake after he realizes that the foot brakes are not holding, and while he still has an opportunity to control the vehicle by using the emergency brake, constitutes negligence. Robinson v. American Home Assurance Company, 183 So.2d 77 (La.App. 3 Cir. 1966); Davis v. United Services Automobile Association, 159 So.2d 398 (La.App. 2 Cir. 1963); Ryan v. Rawls, 260 So.2d 137 (La.App. 2 Cir. 1972); Littleton v. Arrow Food Distributor, Inc., 224 So.2d 131 (La.App. 3 Cir. 1969).
In Robinson v. American Home Assurance Company, supra, the defendant motorist was driving at a speed of about 30 miles per hour and was 60 or 65 feet from the automobile ahead of her when she discovered that her foot brakes would not work. We held that she was negligent in failing to use her emergency brake after she discovered that her foot brakes would not function, and that her negligence in that respect was a proximate cause of the accident.
*763 In Davis v. United Services Automobile Association, supra, the driver was traveling 15 or 20 miles per hour and was three or four car lengths from the point of impact when she realized that her foot brakes were not holding. She did not use her emergency brake, explaining that she "just did not think about it." The Court of Appeal, Second Circuit, held that she was negligent in having failed to use her emergency brake, and that she and the owner and insurer of the car were liable for the damages resulting from the accident.
In the instant suit defendant Robinette was traveling at a speed of 20 to 25 miles per hour, and he was more than 70 or 75 feet from the point of impact when he discovered that his foot brakes would not function. He was an experienced driver, having operated that truck for at least one year and having made many stops in it every day in connection with his work. He was thoroughly familiar with the emergency brake on the truck. He knew that it was in working order, since he had used it only a short time before this accident occurred.
The facts in the Robinson and Davis cases, supra, are similar to those presented here. If the rules applied in those cases are held to be applicable in the instant suit, then we must find that defendant Robinette was negligent in failing to use his emergency brake before the collision occurred.
Defendants, however, rely on Towner v. Milligan, 234 So.2d 500 (La.App. 3 Cir. 1970); Cartwright v. Firemen's Insurance Company of Newark, N.J., 254 La. 330, 223 So.2d 822 (1969); and Delahoussaye v. State Farm Mutual Automobile Insurance Co., 202 So.2d 287 (La.App. 4 Cir. 1967). We distinguish all of those cases from the instant suit.
In Towner, the driver was only 25 or 30 feet from the point of impact when he discovered that his brakes were ineffective. We considered his actions between the time he discovered the emergency and the time of the collision and concluded that he exercised reasonable care during that period in attempting to bring his vehicle to a stop. In Cartwright, the driver was one and one-half car lengths behind the parked vehicle when his brakes failed to operate. And, in Delahoussaye, the motorist was about one car length behind the stationary vehicle ahead of him when his brakes failed, and even under that circumstance he attempted to apply his emergency brake before the collision occurred.
In each of the cited cases the driver was closer to the point of impact than was defendant Robinette when he discovered that his foot brakes would not work. Robinette thus had more time within which to apply his emergency brake than did any of the drivers involved in those cases. Because of these differences in facts, we do not consider the cases relied on by defendants as being applicable here.
The facts presented in each case must be considered, of course, in determining whether the driver in that case had an opportunity to control his vehicle by using the emergency brake, and whether he was negligent in having failed to do so. In the instant suit, we think Robinette had an opportunity to avoid the accident by applying his emergency brake after he discovered that his foot brakes would not function. In our opinion he was negligent in having failed to do so.
Our conclusion is that defendant Robinette was negligent in failing to apply his emergency brake after he discovered that his foot brakes would not function and before the collision occurred. His negligence in that respect was the sole proximate cause of the accident. The trial judge thus correctly held that the driver of the truck and his employer were liable to plaintiff for the damages he sustained in *764 the accident. Having concluded that the driver was negligent in failing to use his emergency brake, it is unnecessary for us to determine whether defendants exercised reasonable care in having the truck inspected and whether they reasonably should have discovered the latent defect in that vehicle earlier.
We turn now to the question of whether the award of general damages made to plaintiff was excessive.
Plaintiff Sers was 46 years of age at the time of the accident. He is a farmer and as a result of the accident he sustained a cervical neck injury. He was initially treated on a conservative basis for a period of about one month, his treatment consisting of three visits to a general practitioner where he received pain relievers and analgesics. The accident occurred on December 12, 1972, and the evidence indicates that plaintiff was still suffering pain and had some restriction of motion at the time of the trial which took place one year later, on December 19, 1973. The trial judge observed that at the time of the trial "he still has some pain when trying to back up his truck or drive his tractor. The pain is not of a constant nature but more of a nagging one. His activity has been restricted because of the recurrent painlifting heavy objects such as bales of hay have to be avoided."
On the basis of those findings the trial court awarded plaintiff $2,500.00 for his pain and suffering. We have concluded that the award of general damages made by the trial court was within the range of "much discretion" which is vested in that court, and we thus will not disturb that award.
For the reasons assigned, the judgment appealed from is affirmed. The costs of this appeal are assessed to defendants-appellants.
Affirmed.